IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 1:26-cv-380

JESSICA ZUMBRUN,

     Plaintiff,

v.

MCDONALD HOLDINGS, INC. d/b/a
MCDONALD AUTOMOTIVE GROUP
MCDONALD NOCO, LLC
NEAL GT, LLC d/b/a
MCDONALD TOYOTA OF GREELEY,

     Defendants

---

## COMPLAINT & JURY DEMAND

---

**COMES NOW** Plaintiff, Jessica Zumbrun, by and through her attorney, Lisa R. Sahli of Lisa R. Sahli, Attorney at Law, LLC, and hereby submits her Complaint & Jury Demand against Defendants Neal GT, LLC doing business as McDonald Automotive Group and McDonald Toyota of Greeley and, as grounds therefor, alleges as follows:

### NATURE OF THE ACTION

1.     Defendants, jointly operating under the trade name, "McDonald Automotive Group" ("McDonald") discriminated against Plaintiff, Jessica Zumbrun (hereafter "Plaintiff" or "Ms. Zumbrun"), due to her sex (female) in violation of Title VII of the Civil Rights Act of 1964, paid her less than her all-male Director peers—although they all performed substantially equal work at McDonald dealerships—in violation of Title VII, the Equal Pay Act and Colorado Equal Pay for Equal Work Act, and retaliated when she reported that the Service Manager refused to speak to her because of her sex and/or for opposing Defendants' practice of paying her

less than her male peers by, amongst other things, cutting her pay, making up false and contrived excuses to fire her, terminating her employment and replacing her with a less qualified male. Defendants' acts and conduct in discriminating and retaliating against Ms. Zumbrun were at all times deliberate, willful, malicious and wanton.

2. Ms. Zumbrun brings this action for sex discrimination, retaliation and unequal pay under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended, the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), as amended, and the Colorado Equal Pay for Equal Work Act ("EPEWA"), C.R.S. § 8-5-101, *et seq*.

## VENUE AND JURISDICTION

3. This action arises under the laws of the United States and the State of Colorado.

4. Jurisdiction in this Court is proper under 28 U.S.C. §§ 1331, 1343 & 1367. This action is authorized and instituted pursuant to 42 U.S.C. §§ 2000e-5(f)(3), 29 U.S.C. 206.

5. Because the events and omissions giving rise to Ms. Zumbrun's claims occurred in this district, venue is proper under 28 U.S.C. § 1391(b).

## ADMINISTRATIVE PREREQUISITES

6. Plaintiff filed a timely Charge of Discrimination with the EEOC alleging discrimination, unequal pay and retaliation based on sex and her protected conduct in reporting discrimination based on sex under Title VII and the EPA. The EEOC has not yet issued its Notice of Right to Sue but it is being requested.

7. Plaintiff hereby files this lawsuit asserting claims for violation of the EPA and EPEWA, neither of which requires administrative exhaustion. The events and omissions giving rise to each of Ms. Zumbrun's claims arises from a common nucleus of operative fact and they are part of the same case or controversy for purposes of 28 U.S.C. § 1367.

8.      Ms. Zumbrun gives notice and hereby reserves her right to amend this Complaint to Title VII claims when those claims are administratively exhausted.

**PARTIES**

9.      Ms. Zumbrun is a citizen of the United States and a resident of the State of Colorado.  At all times relevant, Ms. Zumbrun was an "employee" of Defendants.

10.      On information and belief, Defendant McDonald Holdings, Inc. is a Colorado corporation with principal offices located at 6060 S. Broadway in Littleton, Colorado, doing business as the "McDonald Automotive Group."

11.      Defendant McDonald NOCO, LLC is a Colorado Limited Liability Company with principal offices located at 6060 S. Broadway in Littleton, Colorado, and doing business as McDonald Automotive Group and/or McDonald Toyota of Greeley.

12.      Defendant Neal GT, LLC is a Colorado Limited Liability Company with principal offices located at 6060 S. Broadway in Littleton, Colorado, and doing business as McDonald Automotive Group and/or McDonald Toyota of Greeley.

13.      At all times relevant, Defendants McDonald Holdings, Inc., McDonald NOCO, LLC, and Neal GT, LLC operate as a joint employer, single employer and/or integrated enterprise.  Defendants are thus hereafter referred to collectively as "Defendants" or "McDonald."

14.      Defendants McDonald Holdings, Inc., McDonald NOCO, LLC and Neal GT, LLC are independently and/or jointly an "employer" within the meaning of Title VII, the EPA, and the EPEWA.

15.      Defendants operate approximately thirteen automobile dealerships and service centers along the Front Range and employ more than 500 individuals.

## GENERAL ALLEGATIONS

16.     Ms. Zumbrun began her career with Toyota Motor Sales USA on or about July 10, 2003.  Since that time, Ms. Zumbrun was able to build on her experience with Toyota, obtained numerous Toyota certifications and advanced through the ranks at Toyota dealerships to General Manager and Director roles.  Over her years running Toyota dealerships, Ms. Zumbrun has won recognition and awards for exceptional performance, including the prestigious Toyota President's Award in 2022, and the Denver Cup Award in 2023.

17.     Based on her expertise in the automobile sales industry, Ms. Zumbrun was nominated to the board of directors for the Colorado Automobile Dealers Association in 2022, where she continues to serve as director.

18.     Starting on or about February 1, 2016, Ms. Zumbrun became employed as General Sales Manager ("GSM") by Ehrlich Toyota in Greeley, Colorado.

19.     On or about June 17, 2021, after Defendants had acquired Ehrlich's Toyota Dealerships in Greeley and Fort Morgan, Defendants hired Ms. Zumbrun and she continued working.

20.     Ms. Zumbrun at all times performed admirably and, in or about May 2022, Defendants promoted her from General Sales Manager to Director of their Greeley Toyota store.

21.     At all times relevant to this Complaint, Defendants operated McDonald Automotive Group as a joint employer, single employer and/or "integrated enterprise" in that their operations are interrelated, they share centralized control of operations, common management, common ownership or financial control, centralized payroll and benefits, and centralized personnel management, and follow the same policies and procedures.

-4-

22.     On information and belief, Defendant McDonald Holdings, Inc., is a holding company with no independent operations, and the company's operations are conducted exclusively by a small group of wholly owned subsidiaries.

23.     Prior to their acquisition of the Greeley and Fort Morgan Toyota dealerships, Defendants had never previously owned or operated a Toyota dealership.

24.     At all times during her employment, Ms. Zumbrun reported to Defendants' Vice President of Variable Operations, Steve Powers.

25.     Ms. Zumbrun at all times excelled in her job as a Director and, until Defendants targeted her for retaliation and replacement by a less qualified male, she received only positive reviews and feedback.

26.     For example, in their meetings, Mr. Powers would say Ms. Zumbrun was doing a good job and twice promised they would give her a raise.

27.     On or about October 5, 2022, McDonald CFO, Patrick Hutchinson, invited Ms. Zumbrun to serve on a committee tasked with developing organizational "best practices" for company communication and meetings.

28.     On January 23, 2023, McDonald accountant, Patrick Pinawan, invited Ms. Zumbrun to join the company's "Doing Right Committee," because he was aware that her store had organized several community events and they wanted to start mirroring her stores' example.

29.     Ms. Zumbrun also received high marks on her August 2023 employee survey on all metrics, including: extensive knowledge of inventory, "contributes to a healthy work environment," "motivates others to reach their goal," "communicates openly and effectively with others," "gives constructive and helpful feedback," "treats others with respect," "exhibits

leadership qualities" in her role, "acts professionally," "sets a good example of behavior she asks for," and "takes initiative to solve problems" and other metrics.

30.     After commencing her employment, Ms. Zumbrun discovered that males occupied virtually all high-level roles at McDonald, she was the only female store Director, and the only other female in a high-level role was McDonald's Controller, Brooke Kelley.

31.     Mr. Powers told Ms. Zumbrun that she was the organization's lowest paid Director but, as indicated, twice promised to give her a raise.

32.     When McDonald won Toyota's prestigious "President's Awards" for 2022 performance, and McDonald President, Michael McDonald, was unable to attend the award trip to Hawaii, Defendants rejected Toyota's suggestion that they nominate Ms. Zumbrun to take his place, and instead nominated Chris Coxall, Vice President of Fixed Operations, who is male.

33.     Despite her exceptional performance, when Defendants increased the incentive compensation for two male Toyota Sales Managers in June 2023, they did not increase Ms. Zumbrun's.

34.     During the course of performing her duties, Ms. Zumbrun discovered that the Service Manager, Matthew Holmes, was blatantly uncooperative and refused to communicate with her.

35.     When she spoke to him, Mr. Holmes would walk away or make a rude remark, but Ms. Zumbrun observed that he was cooperative and congenial with male employees.

36.     On or about April 12, 2023, Ms. Zumbrun joined other management employees at the McDonald Audi store.  As she understood it, the purpose of the meeting was to discuss Mr. Holmes' behavior.

37.     The meeting was attended by Mr. Powers, Mr. Coxall, her GSM, Travis Graves, McDonald's HR Director, Deb Wilhelm, Mr. Holmes, Assistant Service Manager, Matt Mrazik, and Parts Manager, Brandon Streetman.

38.     During the April 12 meeting, Ms. Zumbrun engaged in protected conduct by calling Mr. Holmes out for refusing to make eye contact with her even when he spoke to her in the meeting, and said she believed his behavior towards her was because she is a woman.

39.     Although Defendants' HR Director and Ms. Zumbrun's supervisor were both present, contrary to the company's anti-discrimination, anti-harassment and anti-retaliation policies, Defendants did not document or investigate Ms. Zumbrun's claim of sex-based hostile and discriminatory treatment.

40.     In or about August of 2023, Defendants sold their Chrysler/Dodge/Jeep/Ram dealership, leaving its Director, Adam Black, without a position.

41.     Around that time, following a meeting with Mr. Powers, Mr. Black walked into Toyota Greeley, looked around the store and arrogantly declared: "I want all of this."

42.     Ms. Zumbrun's GSM, Travis Graves, resigned in October 2023.

43.     On or about October 31, 2023, Ms. Zumbrun met with Steve Powers, ostensibly to discuss candidates for the open GSM position, but Mr. Powers was not interested in her thoughts on candidates.

44.     Instead, Mr. Powers admitted that GSM selections had never been made without Director input, but he had nevertheless made the decision and had offered the position to Adam Black.

45.     Mr. Powers explained that Mr. Black would serve a dual role as Director of Toyota Fort Morgan and part-time GSM for Toyota Greeley.

46.    While Ms. Zumbrun was certified by Toyota at the "Master" level in 2022 and 2023, Mr. Black had no Toyota certifications.

47.    Ms. Zumbrun was shocked to learn that she was excluded from the decision to hire Mr. Black and set his compensation.

48.    Furthermore, rather than increase her pay, as promised, Mr. Powers gave her a new compensation plan to sign, which reduced her pay.

49.    When she expressed concern about not having a full-time GSM and asked how the job-split would work, Mr. Powers represented that Mr. Black would work 1-2 days a week in Fort Morgan, and spend the remainder of his time at Greeley Toyota.

50.    When Ms. Zumbrun asked why she was the lowest paid Director when her store was McDonald's second most profitable store, Mr. Powers responded that "he [Mr. Black] has a family to support."  Ms. Zumbrun responded that she also has a family to support.

51.    Because Ms. Zumbrun was scheduled to be off work the following week, Mr. Powers agreed that they would announce Mr. Black's new role together on Monday November 6, 2023.

52.    Mr. Powers instead brought Mr. Black to a sales meeting on November 4, 2023, and blindsided Ms. Zumbrun's staff by making the announcement in her absence.

53.    Despite her pay cut and Black's double-compensation, Mr. Black spent very little time at Greeley Toyota, and only rarely attended their mandatory Monday managers' meetings.

54.    Mr. Black's attention was not focused on generating sales for Toyota Greeley.

55.    Although Mr. Graves had reported directly to Ms. Zumbrun, Mr. Black reported to Mr. Powers, leaving her no authority to address his poor attendance and performance for Toyota Greeley.

56.    Mr. Powers ignored Ms. Zumbrun's concerns about Mr. Black's attendance and performance and told him the arrangement was not working.

57.    Despite the loss of her full-time GSM, on November 13, 2023, Ms. Zumbrun received kudos for outpacing forecast on retail car sales, and McDonald's November ranking report listed Toyota Greeley as second for the company in gross sales.

58.    By attaining 105.41% of goal for the year, McDonald Toyota was one of only two Toyota dealerships in Colorado to win Toyota's Denver Cup Award.

59.    On January 5, 2024, Mr. Powers for the first time advised Ms. Zumbrun and Mr. Black that McDonald Toyota was "underperforming."

60.    On or about January 12, 2024, McDonald circulated reports showing that Ms. Zumbrun's store closed out the year with over $5.4 million in net profits, ahead of several other McDonald dealerships with lower net profits or net losses.  This report showed that Ms. Zumbrun thus "outperformed" all but one of McDonald's dealerships.

61.    On February 1, 2024, Mr. Powers and new HR Director, Darci Clark, unexpectedly showed up, called Ms. Zumbrun into an office and summarily terminated her employment, without explanation.

62.    Defendants terminated Ms. Zumbrun without having followed the company's normal disciplinary practices or process.

63.    Although most of McDonald's male Directors generated far less revenue, or even lost revenue in 2023, Defendants did not fire them.

64.    As a result of her termination, Ms. Zumbrun lost wages and benefits, the Denver Cup golf trip, and use of her company vehicle.

65.	Although he had no Toyota certifications, little Toyota experience and was far-less qualified to run the Toyota Greeley dealership than Ms. Zumbrun, Defendants gave Adam Black Ms. Zumbrun's position as Director.

66.	Mr. Black's Fort Morgan dealership further performed less well in 2023 than Greeley Toyota.

67.	It is further unlikely that Defendants would have sold the Chrysler/Dodge/Jeep/Ram dealership run by Mr. Black if it had performed to expectations.

68.	After he took over the Greeley store, Mr. Black was fired for flagrant misconduct.

69.	Despite her superior qualifications, Defendants fired Ms. Zumbrun in order to give Mr. Black what he said he wanted.

70.	Despite its discriminatory and retaliatory treatment, Defendants continued circulating promotional emails purporting to have been sent by Ms. Zumbrun.

71.	Defendant's unlawful, discriminatory acts and conduct were committed with malice or in reckless disregard of Ms. Zumbrun's protected rights.

72.	As a direct and proximate result of Defendants discriminatory and/or retaliatory acts and conduct, Ms. Zumbrun has suffered significant ongoing economic, consequential, compensatory and other damages.

## FIRST CLAIM FOR RELIEF
### (Sex Discrimination in Violation of Title VII)

73.	Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

**--THIS CLAIM IS RESERVED PENDING THE EEOC'S ISSUANCE OF A NOTICE OF RIGHT TO SUE—**

## SECOND CLAIM FOR RELIEF
### (Unequal Pay in Violation of Title VII)

74.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

**--THIS CLAIM IS RESERVED PENDING THE EEOC'S ISSUANCE OF A NOTICE OF RIGHT TO SUE—**

## THIRD CLAIM FOR RELIEF
### (Retaliation in Violation of Title VII)

75.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

**--THIS CLAIM IS RESERVED PENDING THE EEOC'S ISSUANCE OF A NOTICE OF RIGHT TO SUE—**

## FOURTH CLAIM FOR RELIEF
### (Unequal Pay in Violation of the EPA, 29 U.S.C. § 206(d))

76.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

77.    As Director of McDonald Toyota Greeley, Ms. Zumbrun performed work that was substantially equal to that of Defendants' male store Directors in terms of skill, duties, supervision, effort and responsibility.

78.    The working conditions where the Directors performed their jobs were basically the same.

79.    By Mr. Power's own admission, Defendants paid their male Directors more than they paid Ms. Zumbrun.

80.    As a direct and proximate result of Defendant's unlawful discriminatory treatment, Ms. Zumbrun has suffered lost past and future wages and compensation, and has incurred and will continue to incur attorney's fees and legal costs.

## FIFTH CLAIM FOR RELIEF
### (Retaliation in Violation of the EPA, 29 U.S.C. § 215(a)(3))

81.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

82.    On April 12, 2023, Ms. Zumbrun engaged in protected conduct by reporting sex-based discriminatory treatment by Matthew Holmes.

83.    Contrary to their own policies, Defendants failed to document or investigate Ms. Zumbrun's complaint.

84.    On or about October 31, 2023, Ms. Zumbrun again engaged in protected conduct by objecting that she made less than Defendants' male directors when McDonald Toyota of Greeley was McDonald's second most profitable store.

85.    But for her protected conduct in opposing unequal pay, Defendants would not have terminated Ms. Zumbrun's employment.

86.    As a direct and proximate result of Defendant's unlawful retaliatory conduct, Ms. Zumbrun has suffered lost past and future wages and compensation, and has incurred and will continue to incur attorney's fees and legal costs.

## SIXTH CLAIM FOR RELIEF
### (Unequal Pay in Violation of the EPEWA, C.R.S. § 8-5-101, *et seq.*)

87.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

88.    As Director of McDonald Toyota Greeley, Ms. Zumbrun performed work that was substantially similar to the work of Defendants' male store Directors based skill, effort and responsibility.

89.     By Mr. Power's own admission, Defendants paid their male Directors more than they paid Ms. Zumbrun.

90.     As a direct and proximate result of Defendant's unlawful discriminatory treatment, Ms. Zumbrun has suffered lost past and future wages and compensation and has incurred and continues to incur attorney's fees and legal costs.

91.     As a direct and proximate result of Defendants' unlawful discriminatory acts and conduct, Ms. Zumbrun has suffered past and future lost wages and benefits, mental and emotional pain and suffering, mental anguish, anxiety, humiliation, inconvenience, loss of enjoyment of life, and other pecuniary and non-pecuniary losses, and has incurred and will continue to incur attorney's fees and legal costs.

### SIXTH CLAIM FOR RELIEF
**(Unequal Pay in Violation of the EPEWA, C.R.S. § 8-5-101, *et seq*.)**

92.     Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

93.     On or about October 31, 2023, Ms. Zumbrun again engaged in protected conduct by objecting that she made less than Defendants' male directors when McDonald Toyota of Greeley was McDonald's second most profitable store.

94.     But for her protected conduct in opposing unequal pay, Defendants would not have terminated Ms. Zumbrun's employment.

95.     As a direct and proximate result of Defendant's unlawful retaliatory conduct, Ms. Zumbrun has suffered Ms. Zumbrun has suffered past and future lost wages and benefits, mental and emotional pain and suffering, mental anguish, anxiety, humiliation, inconvenience, loss of enjoyment of life, and other pecuniary and non-pecuniary losses, and has incurred and will continue to incur attorney's fees and legal costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Jessica Zumbrun, requests this Honorable Court to enter judgment in her favor and against Defendants, and award all relief allowed by law including, but not limited to, the following:

a)      legal and equitable relief including her lost wages, special and consequential damages and such other and further economic damages as are necessary to make her whole;

b)      compensatory damages including mental and emotional pain and suffering, mental anguish, anxiety, humiliation, inconvenience, loss of enjoyment of life, and other pecuniary and non-pecuniary losses;

c)      liquidated damages pursuant to the EPA and EPEWA;

d)      punitive damages as provided by law;

e)      pre-judgment and post-judgment interest at the highest lawful rate;

f)      attorney's fees and costs, including expert witness fees;

g)      such other and further relief as the Court deems just and proper.

**Plaintiff demands a trial by jury on all claims so triable.**

Respectfully submitted this 30th day of January, 2026.

LISA R. SAHLI, ATTORNEY AT LAW, LLC

*s/ Lisa R. Sahli*
Lisa R. Sahli, #23383

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certified that on January 30, 2026, a true and correct copy of the foregoing Complaint & Jury Demand was electronically filed with the Clerk of Court and served automatically on the following counsel of record via email:

Alice Conway Powers
O'Hagan Meyer Law Firm
1331 17th Street, #350
Denver, CO 80202

*s/ Lisa R. Sahli*